## Higgins v. Utterback.

(Decided January 12, 1916.)

### Appeal from Franklin Circuit Court.

1. Vendor and Purchaser—Writing Evidencing Mortgage and Conditional Sale—Legal Effect of—Action to Cancel Deed—Value of Improvements.—Where the owner of a lot which was sold in satisfaction of a lien debt, purchased it at such sale and induced another to become her surety on the sale bonds, by executing to him a mortgage thereon to indemnify him against loss as such surety and which provided that in the event of his having to pay the sale bonds he should become the owner of the property and entitled to a deed from the court's commissioner conveying it to him, such writing constituted a conditional sale; and as the sale bonds were paid by the surety at maturity, the circuit court properly ordered the commissioner to deed him the property. But, as in this action brought by the former owner of the lot to

cancel the commissioner's deed and recover the property, the surety consented to restore it upon being reimbursed for the amount he paid in satisfaction of the sale bonds, certain taxes he was compelled to pay on the property, and for valuable and lasting improvements made thereon; the court, in adjudging restoration of the property, properly gave the surety a lien thereon for the sums so paid by him, respectively, and the value of the improvements, and in directing a sale of the property to pay same.

2. Vendor and Purchaser—Purchaser in Good Faith—Lien for Improvements—When Rents Not Recoverable by Vendor.—Where one in possession of property as a purchaser in good faith makes valuable and lasting improvements thereon, but is compelled for a cause, with respect to which he is without fault, to surrender the property to another, equity requires that he be allowed the consideration paid by him for the property, together with the value of the improvements made thereon, to the extent that they enhanced its vendible value; and ordinarily in such case the rents should be regulated by the interest on the consideration and on the value of the improvements, being neither greater nor less than their united amounts. It is, however, a well settled rule of equity that the recovery of rents is not permissible in such case until there is a denial of the right of the occupying purchaser to the property; and as in this case there was no denial from the former owner of the property of the occupying purchaser's right thereto, until after she moved into and retook possession of it, and such possession has since been retained by her, she was properly adjudged not entitled to recover anything by way of rents on the property.

DULIN MOSS for appellant.

O'REAR & WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming in part and reversing in part.

This action was brought by the appellant, Mariah Higgins, to obtain the cancellation of a deed from the master commissioner of the Franklin circuit court conveying the appellee, J. B. Utterback, a house and lot on High street in the city of Frankfort, the prayer of the petition asking that she be adjudged the owner of the property and entitled to rent thereon from the date of the deed in question down to the institution of the action. The grounds relied on in the petition for the recovery sought were, that the deed was fraudulently obtained from the commissioner by appellee, without appellant's knowledge or consent, but the petition conceded

that appellee held a mortgage lien upon the house and lot for $445.55, which the appellant expressed her willingness to pay, less the rents alleged to be due her on the property.

The answer and counter-claim of appellee, after traversing the averments of the petition, resisted the recovery sought on the following grounds: That the house and lot in question, then owned by appellant, was sold November 2, 1908, under a judgment of the Franklin circuit court enforcing a mortgage lien thereon in satisfaction of a debt and costs, amounting to $445.55, due one Wm. Loehle, and was purchased for appellant at the commissioner's sale by her brother, Thomas Gordan, at the price of $445.55, for which sale bonds in equal instalments, due in six and twelve months, respectively, from the date of the sale, were required by the judgment to be executed; that being unable to give security on the bonds, Gordan transferred his bid to appellant, who executed the sale bonds with the appellee as surety, she having obtained his consent to become her surety thereon upon her executing to him a mortgage upon the house and lot to indemnify him against loss as such surety, which mortgage contained a provision to the effect that in the event appellee had to pay the sale bonds at maturity, the master commissioner should be required by an order of the Franklin circuit court to convey him the property and thereby invest him with the title to same. That upon the maturity of the sale bonds, respectively, appellant failed to pay either of them, and both were paid by appellee, according to their terms, following which he filed in the Franklin circuit court the mortgage given him by appellant, containing the provision entitling him to a deed to the property through the master commissioner, which deed the latter, by order of the court, thereupon executed to appellee, who, after its approval by the court, caused it to be put to record in the office of the clerk of the Franklin county court. That by the deed thus received from the commissioner, appellee obtained a valid title to the house and lot and its possession was shortly thereafter delivered to him by the appellant. It was further alleged in the answer that after thus acquiring the title to and possession of the property, appellee, conceiving himself to be the owner thereof, made necessary, lasting and valuable improvements thereto and thereon at a cost of $774.08 and

thereby enhanced its vendible value to that amount; that in addition he discovered that there were several years' unpaid back taxes against the property, and that these taxes, together with others accruing after the conveyance of the property to him, aggregating $143.76, he was compelled to pay and did pay to prevent its sale; that these taxes were paid by him at appellant's request and that his services in investigating and ascertaining the amounts thereof, and in superintending the improvements made on the house, were reasonably worth $100.00, for which sum, the taxes paid by him, the value of the lasting improvements made upon the property and the amounts paid by him in satisfaction of the sale bonds, appellee asked judgment against the appellant and asserted a lien against the property in the event the court should adjudge appellant entitled to same. Notwithstanding the allegations of the answer and counter-claim as to appellee's obtaining the title to the property by the commissioner's deed, and its surrender to him by appellant, his assent to her taking the property, upon paying him the amount of his counter-claim, was therein given. All the affirmative matter of the answer and counter-claim, except its averments as to the payment by appellee of the sale bonds, was denied by reply.

After the taking of proof by the parties and submission of the case, the circuit court rendered judgment declaring appellant the owner of the property, but gave appellee a personal judgment against her for the amount of his counter-claim, to-wit: $1,458.11, and a lien upon the house and lot to secure the payment thereof, which lien was enforced and the property directed to be sold by the master commissioner in satisfaction of the debt. From that judgment this appeal is prosecuted.

The appellant's evidence fails to establish any fraud on the part of appellee in procuring from the commissioner the deed conveying him the house and lot in controversy. The mortgage appellant gave him on the property to indemnify him against loss as her security on the sale bonds also evidences a conditional sale thereof, as it expressly authorized the court to order the conveyance of the property by the commissioner to appellee, in the event of his being compelled to pay the sale bonds at maturity, and it is admitted by appellant that she was unable to pay them and that appellee did so. Her contention that the lien created by the mort-

gage she executed to appellee had not matured when he obtained the deed from the commissioner finds no support from the evidence. The fact that the mortgage bore a later date than the sale bonds is immaterial, as the lien it created matured upon appellant's paying the sale bonds after they became due, and his right to enforce the lien by suit, or to take the deed to the property from the commissioner, as expressly allowed by a provision of the mortgage, then accrued and existed. Nor was appellee's right to take the deed by the terms of the mortgage conditioned upon his giving appellant notice of his purpose to apply for the deed, though such notice was given by him before getting it. When advised by appellee of his intention to obtain the deed from the commissioner, as allowed by the provision of the mortgage in question, appellant was advised by him to repay him what he had paid in discharge of the sale bonds and keep the property, and some months after he received the deed and before he began making the repairs upon the house on the lot, he offered to reconvey the property to her if she would pay him as much as $300.00 of the amount he had paid in discharge of the sale bonds and give him a mortgage on the property to secure the balance, but she failed to accept the offer, at the same time making no objection to his having taken the deed.

It is not material that the deed was made by the commissioner under an order entered at a called term of the court or that it was executed and delivered at the called term instead of at the regular term of the court, held a few weeks later, as appellant knew of the provision of the mortgage entitling him to it and had been informed before it was made of his purpose to obtain it, and, furthermore, she was not then able to pay him the amount of the sale bonds or any part thereof, and did not expect to do so.

What we have said with respect to the facts attending and following appellee's obtention of the deed from the commissioner, manifests the absence of any fraud on his part in his dealings with appellant growing out of the transactions between them in reference to the property in controversy. It is unnecessary to determine whether the deed from the commissioner passed to appellee such a title to the property as would, if relied on for that purpose, have defeated the right of redemp-

tion asserted by appellant, for that question has been waived and eliminated by his answer and counter-claim, which freely accords her such right. This being so, it only remains to be determined whether the judgment appealed from adjusted the rights of the parties as required by the rules of equity.

According to the weight of the evidence, not only did appellant, with knowledge of the conveyance of the house and lot to appellee by the commissioner, fail to avail herself of the latter's offer to permit her to redeem it, but for two or more years she acquiesced in his claim of title thereto and led him to believe that it was his property absolutely. Nor was this all. She requested him to pay the several years' taxes outstanding against the property and consented to his making thereon the repairs and improvements set forth in his answer and counter-claim, and, in addition, voluntarily surrendered to him the possession of the property.

In view of the situation thus presented the conclusion is inevitable that appellee in good faith believed himself to be the owner of the property, and with such belief paid the taxes and made the improvements thereon set forth in his answer and counter-claim. This being so, it was the duty of the chancellor in adjudging appellant to be the owner of the property, to give appellee a lien thereon, both for the money which he paid in satisfaction of the sale bonds, with interest, and the enhancement of the value of the property by reason of the improvements which he erected on it while in possession, under the belief that he was the legal owner thereof, and also for the taxes assessed against the property, paid by him, which were a lien thereon.

In cases of rescission of contracts for the sale of land the equitable rule ordinarily applied is, that the vendor should be allowed the reasonable rental value of the property during his deprivation of the use thereof, accruing after legal notice to the occupant under the purchase, but the property does not belong to him, and the latter should be allowed the consideration paid by him for the property, together with the value of the improvements he may in good faith have made thereon, to the extent that they enhanced its vendible value; rents to be regulated by the interest on the consideration and on the value of the improvements, being neither greater nor less than their united amounts. Hawkins, etc. v. Brown,

80. Ky., 186; .Bell's Heirs v. Barrett, 2 J. J. Mar., 520; Thomas v. Thomas' Exr., 16 B. Mon., 400; Barbour v. Bell, 1 A. K. Mar., 246; Morton's Heirs v. Ridgeway, etc., 3 J. J. Mar., 258.

As, however, the facts of each particular case must, in large degree, control the equitable adjustment of the rights of the parties, the rule referred to must be applied in the instant case with some qualification. According to the evidence appellant, with appellee's consent, remained in possession of the house and lot in controversy some months after he obtained the deed to it, and until he commenced to repair and improve the property; but during such occupancy of the property she recognized his ownership thereof. She then voluntarily left it and remained away until the improvements thereon had been well nigh completed, when, without appellee's knowledge or consent, and acting, as she testified under the advice of her attorney, she moved into and retook possession of the house and premises and has since remained in possession thereof. It further appears from the evidence that not until appellant thus retook possession of the house and lot did she dispute appellee's title thereto, acquired under the deed from the commissioner. She did, however, then set up claim to the property and continued to assert such claim down to the time of the institution of this action for its recovery. In view of these facts, the judgment of the circuit court properly disallowed her any rents upon the property; it being a well settled rule of equity that the recovery of rents is not permissible in such case, until there is a denial of the right of the occupying purchaser to the property or an assertion of title on the part of the vendor. In this case there was no denial from appellant of appellee's right to the property, or assertion of title on her part thereto, until after she moved into and retook possession of it, and as from that time down to the rendering of the judgment she continued in possession of the property, it follows from the application of the foregoing rule that she was not entitled to recover anything by way of rents on the property from appellee. The rule, supra, is approved in the following cases: Fox's Heirs v. Longley, 1 A. K. Mar., 388; Kay v. Curd, 6 B. Mon., 104; Reed v. Lander, 3 Bush, 5; Padgett v. Decker, 145 Ky., 227; Grimes v. Shreve, 6 B. Mon., 567; Euing v. Hanley, 4 Litt., 372; Bourne v. Odam, 17 R., 696;

Robards v. Robards, 27 R., 494; Grainger v. Jenkins, 156 Ky., 257.

The only difficulty we have in deciding the case is as to the matter of fixing the value of the improvements made by appellee on the property. Much of the voluminous evidence appearing in the record is incompetent, but we think the weight of it clearly establishes the facts, first, that the repairs and improvements made by appellee upon the house and lot were necessary; second, that they are of a lasting and permanent character; third, that they greatly enhanced the vendible value of the property. Nearly all of appellee's evidence is directed, however, to a showing of the actual cost of the material used and labor required in making the improvements, and such cost appears to be accurately stated in the itemized account filed with the answer and counter-claim. Appellee's evidence further and conclusively shows that the house was not habitable when he began the repairs and improvements thereon, that the floors and foundation were rotten, that the roof leaked and the weatherboarding had so rotted as to require the removal of the most of it; and that the repairs and additions which were made to the building by appellee made it durable and converted it into a commodious and comfortable dwelling house. On the other hand, much of the evidence introduced in appellant's behalf was to the effect that while some repairing of the house was needed, the repairs and improvements made by appellee were far greater than were necessary for the preservation of the property and of a character more expensive than comported with the character of the building. There is substantially no controversy as to the amount actually expended by appellee for the material used and labor employed in making the improvements. The amount recovered on his counter-claim is made up of the following items: $445.55, paid on the two sale bonds upon which appellee became appellant's surety; $143.76, taxes paid by him on the property; $774.08, the amount actually expended upon the improvements down to the time of the institution of the action; $100.00, allowed him for services in ascertaining and paying the taxes against the property and superintending the improvements made thereon.

Manifestly, the $100.00 compensation allowed appellee for his services in the matters referred to is an

erroneous charge, which should not have been allowed, but this item, deducted from the sum allowed him by the judgment would leave $1,354.39 due him. The question is, however, not whether the improvements required the expenditures above set forth, but to what extent did they increase the vendible value of the property; this being the criterion by which appellee's recovery is to be determined. Unfortunately, the only evidence directly on this point was furnished by the testimony of appellee himself and one other witness, both of whom, in substance, stated that the vendible value of the house and lot was increased or enhanced by the improvements to the extent of the cost thereof, and considering the testimony as a whole, with reference to the character and cost of the improvements, we find no sufficient reason for refusing to concur in this conclusion. We are, therefore, of opinion that the chancellor did not err in allowing appellee $774.08 as the value of the improvements.

As we understand the judgment it does not allow appellee any interest upon this $774.08. He is entitled to interest on the amount paid by him in satisfaction of the sale bonds, from the dates of payment, respectively, and to interest on the $143.76 paid by him in discharge of taxes due upon the property, but is not entitled to interest on the $774.08 allowed him as the value of the improvements.

The judgment of the circuit court is correct in all particulars, except as to its allowance to the appellee of the item of $100.00 as compensation for his services in ascertaining and paying the back taxes against the property and superintending the work of making the improvements. In other respects the judgment is affirmed but as to the item of $100.00 it is reversed and cause remanded, with directions to the circuit court to enter a judgment in conformity to the opinion.